IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MOUNTAINEER MINERALS, LLC,

      Plaintiff,

v.                                   Civil Action No. 1:16CV28
                                             (STAMP)

ANTERO RESOURCES CORPORATION,
a Delaware corporation formerly known as
ANTERO RESOURCES APPALACHIAN CORPORATION,

      Defendant.


**MEMORANDUM OPINION AND ORDER**
**GRANTING AS FRAMED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Background</u>

The plaintiff originally filed this civil action in the Circuit Court of Ritchie County, West Virginia. Thereafter, the defendant removed the action to this Court based on diversity jurisdiction. The plaintiff is Mountaineer Minerals, LLC, which alleges that it is the rightful owner of the Oil and Gas Marcellus Leasehold Rights (the "Marcellus Rights"), which arise from an oil and gas lease (the "Collins Lease") dated June 11, 1919. The Collins Lease was recorded in Ritchie County, West Virginia, and executed by William J. Collins and Sarah Collins to E.D. Willis. The defendant is Antero Resources Corporation, a Delaware corporation that engages in the drilling and production of oil and gas wells in West Virginia and other states. The plaintiff claims that the defendant was not a bona fide purchaser of the Marcellus Rights because the defendant had actual notice of the ownership

claim of Perkins Oil and Gas, Inc. ("Perkins"), the plaintiff's predecessor in interest to those rights.

The complaint alleges that the dispute over ownership of the Marcellus Rights goes back to the July 20, 1985 assignment of the Collins Lease by Crude Oil and Gas, Inc. ("Crude") to Monongahela Leasing, Inc. That assignment was recorded in Doddridge County, West Virginia, on July 31, 1985, but not recorded in Ritchie County, West Virginia, until August 2, 2013. Then, on October 3, 1986, Monongahela Leasing assigned the Collins Lease to P. D. Farr, II. That assignment was recorded in Ritchie County on October 7, 1986. On August 30, 1996, P. D. Farr, II assigned the Collins Lease to Ritchie Petroleum Corporation. That assignment was recorded on September 6, 1996 in Ritchie County. On July 19, 2004, Ritchie Petroleum assigned the Collins Lease to Perkins. That assignment was recorded in Ritchie County on July 21, 2004. On October 29, 2015, the plaintiff acquired an assignment from Perkins to the portion of the Collins Lease known as the Marcellus Rights. Thus, the only assignment of the Collins Lease not recorded in Ritchie County was the 1985 assignment from Crude to Monongahela Leasing.

The complaint then alleges that Crude assigned the Collins Lease a second time on December 18, 2012. Their first assignment of the Collins Lease was to Monongahela Leasing in 1985, and this second assignment of the same lease was to Clarence E. Sigley, Sr.

The complaint notes that Mr. Sigley notarized the signature for both parties when Crude first assigned the Collins Lease to Monongahela Leasing. The complaint states that, on the day Mr. Sigley acquired the Collins Lease, December 18, 2012, he immediately assigned his rights in the Collins Lease to the defendant. Both the assignment to and the assignment from Mr. Sigley were recorded in Ritchie County.

Lastly, the complaint alleges that, on August 12, 2012, four months before the defendant acquired its assignment, the defendant's Administrative and Legal Manager, J. Kevin Ellis, sent an email acknowledging that Perkins was the rightful owner of the Collins Lease. For those reasons, the plaintiff claims that, on the date the defendant acquired its assignment, the defendant had actual notice that Perkins, not Crude, was the rightful owner of the Collins Lease. Thus, the plaintiff states that the defendant cannot be afforded bona fide purchaser protection under West Virginia law.

At issue in this memorandum opinion are the parties' cross motions for summary judgment. ECF Nos. 52 and 54. After filing the cross motions for summary judgment and all responses and replies, the parties submitted to the Court a stipulation of undisputed facts regarding the chain of title of the Collins Lease. ECF No. 70. In the stipulation, the parties indicate their agreement to the chain of title beginning with the 1919 lease from

William J. Collins and Sarah Collins to E.D. Willis and up to the 1979 assignment of the Collins Lease by Consumers Gas Utility Company to W.C.P. Partnership. That last assignment agreed to in the stipulation was recorded on September 22, 1982, in Ritchie County, West Virginia.

For the reasons set forth below, the plaintiff's motion for summary judgment is granted as framed and the defendant's motion for summary judgment is denied.

## II. Cross Motions for Summary Judgment

The parties have now filed cross motions for summary judgment, which are discussed in turn below. Both parties filed responses and replies to the respective motions for summary judgment.

## A. Plaintiff's Motion for Summary Judgment

The plaintiff's motion alleges that, around April 2011, the defendant initiated negotiations with Perkins to purchase the Marcellus Rights in the Collins Lease, and that Perkins continued those negotiations with the defendant in good faith for a period of two years. A purchase sale agreement was finalized and executed by the parties on February 11, 2013, in which the defendant would purchase the Marcellus Rights from Perkins for $2,785,000.00. The plaintiff then alleges that well into the negotiation process, in December 2012, the defendant "arranged a plot" to purchase the entire Collins Lease from Crude for $867,000.00. The plaintiff alleges that the defendant, in arranging this transaction,

contacted Mr. Sigley, a third party, to acquire an assignment from Crude. Mr. Sigley was then to assign the lease to the defendant. The plaintiff alleges that the defendant financed this transaction by paying Mr. Sigley $500.00 per acre and paying Crude $1,000.00 per acre.

The plaintiff also alleges that the same representative for the defendant, Mr. Ellis, negotiated both the transaction between the defendant and Perkins and between the defendant and Crude. The plaintiff then alleges that Mr. Ellis continued negotiations with Perkins even after purchasing the assignment from Crude and, on February 11, 2013, signed the contract with Perkins in bad faith. The plaintiff states that, at the time the contract was executed, the defendant had neither informed Perkins that it had purchased an assignment from Mr. Sigley nor had recorded the assignment. Thus, the plaintiff claims that Perkins had no actual, constructive, or inquiry notice that the defendant was claiming an ownership interest in the Marcellus Rights at the time Perkins entered into the contract with the defendant. The plaintiff then contends that the defendant did not provide Perkins with a defect notice until March 22, 2013, the day after the defendant recorded its assignment from Mr. Sigley. In accordance with the defect cure procedure outlined in their February 11, 2013 contract, Perkins cured the defect in the chain of title by recording the assignment from Crude to Monongahela Leasing in Ritchie County. Nonetheless, the

plaintiff contends that the defendant still refused to accept the legitimacy of the curative documents and continues to assert ownership of the Collins Lease.  Lastly, the plaintiff claims that the defendant has resorted to self help by drilling at least ten horizontal wells on the Collins Lease.

Accordingly, the plaintiff's motion argues that (1) the defendant had inquiry notice and is not a bona fide purchaser, (2) the defendant breached its February 11, 2013 contract with Perkins, and (3) the defendant has engaged in unfair dealing in negotiations for the purchase of the Marcellus Rights.  In response, the defendant alleges that the plaintiff never pled claims asserting breach of contract or unfair dealing.

B.  Defendant's Motion for Summary Judgment

The defendant's motion for summary judgment argues that the plaintiff is not entitled to declaratory judgment because it paid no consideration for and, thus, has an insufficient interest in the Marcellus Rights to the Collins Lease.  The defendant notes that, by contract, the plaintiff is not obligated to pay Perkins for the Marcellus Rights unless a court determines that the plaintiff is the rightful owner of the Collins Lease.

The defendant also argues that it nonetheless holds a superior title by virtue of its unbroken, recorded chain of title.  The defendant claims that, as part of its due diligence in December 2012, Mr. Ellis obtained an ownership report on the Collins Lease

showing that Crude owned the formation relevant to the defendant's interest in the Collins Lease, not Perkins.  The December 2012 ownership report identified Crude as the owner below the Fifth Sand formation of the Collins Lease, which included the Marcellus formation that is thousands of feet below the Fifth Sand formation. The December 2012 ownership report identified Perkins as owning only the leasehold rights through the Fifth Sand formation, and not the Marcellus Rights below.  The defendant further asserts that Perkins did not provide to the defendant (1) the 1985 assignment from Crude to Monongahela Leasing, which was only recorded in Doddridge County at the time of the defendant's due diligence or (2) the 1986 assignment from Monongahela Leasing to P. D. Farr, II.

The defendant states that it did not obtain a copy of the 1985 assignment to Monongahela Leasing until the defendant sent a defect notice to Perkins.  The defendant also states that Perkins did not record that assignment until after the defendant sent its defect notice, and that Mr. Sigley went to the Ritchie County courthouse to check that the Collins Lease was still in Crude's name before purchasing the Marcellus Rights from Crude.  Thus, the defendant asserts that it had no reason to question the unbroken, recorded chain of title showing Crude with the leasehold rights below the Fifth Sand formation, which includes the Marcellus Rights.  The defendant claims that Perkins's purported interest was explained by

the record title showing it with only the leasehold rights through

the Fifth Sand formation.

### III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:
>     (A)  citing to particular parts of materials in the
> record, including depositions, documents, electronically
> stored information, affidavits or declarations,
> stipulations . . . admissions, interrogatory answers, or
> other materials; or
>     (B)  showing that the materials cited do not
> establish the absence or presence of a genuine dispute,
> or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears

the initial burden of showing the absence of any genuine issues of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986).  "The burden then shifts to the nonmoving party to come

forward with facts sufficient to create a triable issue of fact."

Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.

1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the

United States Supreme Court noted in Anderson, "Rule 56(e) itself

provides that a party opposing a properly supported motion for

summary judgment may not rest upon the mere allegations or denials

of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial."  Anderson, 477 U.S. at

256.  "The inquiry performed is the threshold inquiry of

8

determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

For the following reasons, this Court grants as framed the plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment.

A.  The Defendant Had Inquiry Notice of Perkins's Ownership Claim to the Marcellus Rights

"A bona fide purchaser of land is one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry."  Stickley v. Thorn, 106 S.E. 240, 242 (W. Va. 1921) (citing Carpenter Paper Co. v. Wilcox, 70 N.W. 228 (Neb. 1897)); see also Wolfe v. Alpizar, 637 S.E.2d 623, 628 (W. Va. 2006) ("A bona fide purchaser is one who actually purchases in good faith." (quoting Subcarrier Commc'ns, Inc. v. Nield, 624 S.E.2d 729, 737 (W. Va. 2005))).  "Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice."  Pocahontas Tanning Co. v. St. Lawrence Boom and Mfg. Co., 60 S.E. 890 (W. Va. 1908).  Notice is imputed where "the exercise of ordinary diligence" such as "a reasonably careful inspection of the premises" would have alerted the purchaser of a competing interest. Fanti v. Welsh, 161 S.E.2d 501, 505 (W. Va. 1968).  For instance, "[w]hen a prospective buyer has reasonable grounds to believe that property may have been conveyed in an instrument not of record, he is obliged to use reasonable diligence to determine whether such previous conveyance exists."  Eagle Gas Co. v. Doran Assocs., Inc., 387 S.E.2d 99, 102 (W. Va. 1989).  "[T]he burden of proving notice

to a purchaser for value is upon him who alleges it." Alexander v. Andrews, 64 S.E.2d 487, 491 (W. Va. 1951).

The defendant relies heavily on Trans Energy, Inc. v. EQT Production Company, 743 F.3d 895 (4th Cir. 2014), in which the United States Court of Appeals for the Fourth Circuit upheld this Court's holding that one of the plaintiffs, Prima Oil Company, was a bona fide purchaser and had superior title to the oil and gas lease "by virtue of its unbroken, recorded chain of title." 743 F.3d at 907. The Fourth Circuit "deem[ed] [the] non-specific references to contractual obligations insufficient to cause a reasonable buyer to conduct a further investigation outside the record." Id. at 906. The Fourth Circuit held that, pursuant to West Virginia Code § 40-1-9, unrecorded indentures that purported to sever gas rights from oil rights were invalid as against a bona fide purchaser. Id. The Fourth Circuit reasoned that "a purchaser is not punished for failing to conduct due diligence when all reasonable inquiries would nevertheless have failed to uncover a competing claim" and that "'vague rumor or mere surmises are insufficient in themselves' to create constructive notice." Id. (quoting Pocahontas Tanning Co., 60 S.E. at 893).

This Court finds that the present case is distinguishable from Trans Energy by virtue of the defendant's direct negotiations with Perkins that provided the defendant with knowledge of suspicious circumstances and imputed inquiry notice. Unlike in Trans Energy,

reasonable inquiries in this case would have uncovered Perkins's competing claim, and constructive notice was created by much more than "vague rumor or mere surmises." The defendant's approximately two-year long negotiations, beginning in April 2011 (ECF No. 55, Ex. 4), to purchase various rights in the Collins Lease should have put the defendant on notice that it needed to ascertain the nature of Perkins's rights in the Collins Lease. The first draft of the purchase sale agreement, dated March 23, 2011, demonstrates that the negotiations were for the purchase of the Marcellus Rights, which are identified by location in that first draft of the purchase sale agreement. ECF No. 53, Ex. 2. A later draft of the purchase sale agreement, dated June 4, 2012, also explicitly states that the purchase would include the Marcellus Rights, which are identified as the formations beginning at the top of the Rinestreet formation and going through 100 feet below the top of the Onondaga formation. ECF No. 53, Ex. 3.

Furthermore, affidavits from Mr. Randy Lancaster, an employee of Perkins, and Mr. Clay Perkins, Vice President of Operations and part owner of Perkins, assert that Mr. Lancaster and Mr. Perkins were engaged in negotiations with Antero to purchase the Marcellus Rights specifically. ECF No. 53, Exs. 18 and 19. Those affidavits also state that the defendant never made any inquiry into the suspicious circumstances surrounding the ownership of the Marcellus Rights. Id.

Mr. Lancaster sent an email to Mr. Ellis, Antero's Administrative and Legal Manager, on August 13, 2012, which should have further prompted the defendant to conduct due diligence beyond looking at the record title. The email stated, in relevant part, as follows:

> The Perkins family and I are becoming very concerned about the lack of communication regarding Antero activities on our leases . . . . Royalty owners for [the Collins Lease] have been approached by Antero about signing a pooling amendment. We don't understand why this would be happening at this time, and we are assuming it is a misunderstanding. I am regularly asked about this from the Perkins family, and I can only reply that I left another message and have not heard back from Antero. It is becoming difficult to understand. I realize this is a busy time for everybody, but I hope we can get this corrected and begin working together more productively.

ECF No. 53, Ex. 20. Importantly, Mr. Lancaster sent this email to Mr. Ellis over four months before the defendant acquired the assignment from Mr. Sigley. And, the next day, Mr. Ellis replied as follows:

> I was made aware recently that our land brokers had sent out proposed pooling agreements to some of the current royalty owners on the [Collins Lease] in Ritchie County that is owned by Perkins. I wanted to let you all know this was simply an error on the part of our land brokers. We have spoken with the group who handles the pooling agreements and they have stopped sending the pooling agreements out. If, however, you become aware of another incident where this occurs, please send me an email.

ECF No. 53, Ex. 21.

In addition to the December 2012 ownership report relied upon by the defendants in determining that Crude owned the Marcellus

Rights, the defendants also received an earlier ownership report prepared on October 29, 2012. ECF No. 53, Ex. 22. The earlier ownership report lists Perkins as the owner of the Marcellus Rights. That ownership report indicates that there were Perkins wells on the Collins Lease going down to 6,000 feet, which is directly above the Marcellus formation. Thus, the earlier ownership report showed that Perkins had wells thousands of feet below the Fifth Sand formation, where the defendants now claim they believed Perkins's rights ended and Crude's rights began. Yet, less than two months after receiving the October 29, 2012 ownership report, the defendant acquired the assignment of the Marcellus Rights from Crude in December 2012, without ever asking Perkins any question about its claim to the Marcellus Rights as set forth in the earlier ownership report.

Mr. Ellis even admitted in his deposition that he had knowledge of Perkins's ownership claim to the Marcellus Rights. ECF No. 53, Exs. 4 and 5. Specifically, Mr. Ellis responded to questions about Perkins's ownership claim to the Marcellus Rights as follows:

> [Question:]    [Perkins] represented they owned the Marcellus rights specifically, correct?
> [Answer:]    They said, "We own the lease," whatever that may or may not mean, but I didn't know. I just knew that they said, "We have the Collins lease."
> [Question:]    And it was in the Purchase Sale Agreement, correct?
> [Answer:]    Sure.
> [Question:]    And the Purchase Sale Agreement only applied to the Marcellus rights, isn't that true?

[Answer:]          Yes, uh-huh.
[Question:]        So therefore, Perkins claimed that they
owned the Marcellus rights in the Collins lease?
[Answer:]          Sure, they claimed they owned it.

ECF No. 53, Ex. 4. Mr. Ellis stated in his deposition that the
defendant "[wasn't] interested in the shallow dimensional producing
formations" and that he "[couldn't] think of any" pooling
modifications that the defendant had ever sent out for shallow
wells. ECF No. 55, Ex. 4 at 5-6. Thus, Mr. Ellis should have been
alerted by Mr. Lancaster's email, which asked why the defendant was
approaching royalty owners about signing a pooling amendment, that
Perkins had a competing interest in the deeper Marcellus Rights.
Combined with the October 29, 2012 ownership report and the
affidavits of Mr. Lancaster and Mr. Perkins, Mr. Ellis's deposition
demonstrates that the negotiations between Perkins and the
defendant were directed towards the purchase of the Marcellus
Rights.

     The above circumstances are sufficiently suspicious to impute
to the defendant inquiry notice of Perkins's competing interest in
the Marcellus Rights. The defendant's ongoing negotiations with
Perkins to purchase portions of the Collins Lease, including the
Marcellus Rights, should have alerted the defendant to Perkins's
ownership claim to the Marcellus Rights. And, given those
reasonable grounds to believe that the Marcellus Rights may have
been conveyed in an instrument not of record, the defendant was
obliged under West Virginia law to use reasonable diligence to

15

determine whether a previous conveyance existed. Under these circumstances, the defendant was not permitted to simply rely on Crude's record title without inquiring into Perkins's competing claim.

Additionally, this Court finds that the defendant is not a bona fide purchaser because it did not "actually purchase[] in good faith." Wolfe, 637 S.E.2d at 628 (quoting Subcarrier Commc'ns, Inc., 624 S.E.2d at 737). After having already acquired the Marcellus Rights from Crude on December 18, 2012, the defendant conducted a meeting with Perkins in January 2013, during which the defendant removed language from the purchase sale agreement that would allow either party to opt out of the contract if defected acreage took the approved acreage total to below eighty percent of the original stated acreage. ECF No. 53, Ex. 19. At that January 2013 meeting, the defendant did not disclose to Perkins that it had already purchased the Marcellus Rights in December 2012, from Mr. Sigley. Id. The defendant still did not disclose that it had already purchased the Marcellus Rights from Mr. Sigley when it executed the final purchase sale agreement with Perkins on February 11, 2013, even though the contract identified Perkins as the owner of the Marcellus Rights. Id.

Then, on March 22, 2013, Perkins received a defect notice from the defendant regarding the Marcellus Rights, which was the first time the defendant had ever alerted Perkins of a potential defect.

16

ECF No. 53, Ex. 14.  The defendant recorded its assignment of the Marcellus Rights from Mr. Sigley one day prior to providing Perkins with the defect notice, on March 21, 2013.  ECF No. 53, Ex. 11. Additionally, the defendant did not stop drilling wells on the Marcellus Rights after the plaintiff filed this suit against them. ECF No. 53, Ex. 17.

The Court finds from these circumstances that the defendant did not actually purchase the Marcellus Rights from Mr. Sigley in good faith.  Rather, the circumstances suggest that the defendant took steps to ensure that Perkins did not become aware of a potential defect in its claim to the Marcellus Rights until after the February 11, 2013 purchase sale agreement was executed without the opt-out language.  Accordingly, the defendant was not a bona fide purchaser of the Marcellus Rights and is not entitled to the rights and protections of a bona fide purchaser.

B.   A Declaration of the Plaintiff's Ownership of the Marcellus Rights Is Proper Under the Federal Declaratory Judgment Act

A claim for declaratory relief originally filed in state court under state law is converted to a claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., upon removal. See Barber v. Magnum Land Servs., LLC, No. 1:13CV33, 2014 WL 5148575, at *8 (N.D. W. Va. Oct. 14, 2014).  Accordingly, "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts."  White v. Nat'l Union Fire

Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990). In federal courts,

declaratory judgment "is appropriate 'when the judgment will serve

a useful purpose in clarifying and settling the legal relations in

issue, and . . . when it will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the

proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256

(4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d

321, 325 (4th Cir. 1937)).

The Fourth Circuit, in Volvo Construction North America, Inc.

v. CLM Equipment Company, Inc., 386 F.3d 581 (4th Cir. 2004),

identified the three required elements for a declaratory judgment

claim. Those elements are as follows:

> (1) the complaint alleges an 'actual controversy' between
> the parties 'of sufficient immediacy and reality to
> warrant issuance of a declaratory judgment;' (2) the
> court possesses an independent basis for jurisdiction
> over the parties (e.g., federal question or diversity
> jurisdiction); and (3) the court does not abuse its
> discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc., 386 F.3d at 592.

The defendant argues that the plaintiff is not entitled to a

declaration under the federal Declaratory Judgment Act because it

paid no consideration for its interest in the Marcellus Rights.

The defendant cites Nationwide Agribusiness Insurance Company v.

Degasperin, No. 1:08CV184, 2011 WL 2728302 (N.D. W. Va. July 12,

2011), in which this Court held in a declaratory judgment action

that a party asserting a derivative interest based on an insurance

contract was bound by collateral estoppel because her rights were coterminous with those of the policyholder. The defendant points out that, in Degasperin, this Court relied on Conley v. Spillers, 301 S.E.2d 216 (W. Va. 1983), which held that collateral estoppel does not require mutuality of parties and may be asserted against a person in privity to a party of the prior action. Thus, the defendant contends that, "because [the plaintiff] has nothing at stake in this action, the Court should not grant declaratory relief unless it determines that [Perkins] will be bound by collateral estoppel by virtue of the privity of contract between [the plaintiff] and [Perkins]." ECF No. 55 at 15.

However, in West Virginia, "valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." Tabler v. Hoult, 158 S.E. 782, 782 (W. Va. 1931). The plaintiff states in its pleadings that it has assumed the risk and expense of litigating this matter in exchange for the assignment of the Marcellus Rights from Perkins. Additionally, at the pretrial conference held by this Court on May 1, 2017, the plaintiff explained that it has, in fact, incurred "considerable expense" in bringing this civil action. Specifically, the plaintiff stated that it had incurred "several thousand dollars in depositions and other expenses, filing fees, [and] costs" and that

attorney's fees "are accruing." The plaintiff also reiterates in its pleadings that it is "obligated to pay Perkins the balance of the assignment price at the conclusion of the litigation." ECF No. 59 at 5.

The Court finds that the plaintiff has incurred considerable expense and risk in litigating this matter. Thus, the Court concludes that the plaintiff has provided valuable consideration for the Marcellus Rights and has satisfied the requirements of the Volvo test. Accordingly, under the federal Declaratory Judgment Act, the plaintiff is entitled to a declaration that it is the rightful owner of the Marcellus Rights.

C.    The Court Cannot Consider the Plaintiff's Claims for Breach of Contract and Unfair Dealing Because They Were Not Pled in the Complaint

"[A plaintiff] may not use summary-judgment briefing to amend his complaint." Frazier v. N.C. Dep't of Transp., No. 4:14-CV-149-D, 2016 WL 5416609, at *7 (E.D.N.C. Sept. 26, 2016). Similarly, "a plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment." Miller v. Jack, No. 1:06CV64, 2007 WL 2050409, at *4 (N.D. W. Va. July 12, 2007). The plaintiff raises its claims of breach of contract and unfair dealing for the first time in its motion for summary judgment. The complaint includes only the claim for declaratory judgment. Additionally, the plaintiff acknowledged at the pretrial conference

that there is no claim for breach of contract or unfair dealing in the complaint and that the suit is "strictly declaratory judgment." Thus, the Court will not consider the plaintiff's claims of breach of contract and unfair dealing in ruling on the cross motions for summary judgment.

V.  Conclusion

For the reasons set forth above, the plaintiff's motion for summary judgment (ECF No. 52) is GRANTED AS FRAMED and the defendant's motion for summary judgment (ECF No. 54) is DENIED. Thus, the plaintiff's claim for declaratory judgment is GRANTED and the Court DECLARES that Mountaineer Minerals, LLC is the rightful owner of the Oil and Gas Marcellus Leasehold Rights arising from the Collins Lease.  The Court declines to rule on the breach of contract and unfair dealing claims asserted in the plaintiff's motion for summary judgment because neither claim was asserted in the complaint.  The plaintiff's Motion to Amend Complaint to Add Defendants (ECF No. 23) and the defendant's Motion to Compel Joinder of Perkins (ECF No. 24) are DENIED AS MOOT.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal

Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

     DATED:    August 10, 2017

                             /s/ Frederick P. Stamp, Jr.
                             FREDERICK P. STAMP, JR.
                             UNITED STATES DISTRICT JUDGE