IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MOUNTAINEER MINERALS, LLC,
a West Virginia limited
liability company,

    Plaintiff,

v.                                               Civil Action No. 1:16CV28
                                                                 (STAMP)

ANTERO RESOURCES CORPORATION,
a Delaware corporation formerly known as
Antero Resources Appalachian Corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT ANTERO RESOURCES'
SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF MOUNTAINEER MINERALS'
SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

I.   Background

In this civil action, three oil and gas companies, Antero Resources Corporation ("Antero Resources"), Mountaineer Minerals, LLC ("Mountaineer Minerals"), and Perkins Oil and Gas ("Perkins"), assert some interest in the rightful ownership of oil and gas leasehold rights (the "Marcellus Rights") governed by a 100-year-old lease (the "Collins Lease").[1] Perkins currently owns and operates oil and gas wells that extract oil and gas from

---

[1]Perkins is not a party to this action since Perkins and plaintiff Mountaineer Minerals entered into a contract under which the plaintiff would pay Perkins a sum in exchange for Perkins assigning its Collins Lease rights to the plaintiff, after a determination that the plaintiff is the rightful owner. In the meantime, Perkins gave plaintiff Mountaineer Minerals access to its mineral rights in exchange for $1.00 and Mountaineer Minerals' assurance to defend, protect, indemnify, and hold harmless Perkins from litigation, etc.

beneath the Collins Lease property. Defendant Antero Resources and plaintiff Mountaineer Minerals both seek ownership of the Marcellus Rights. Defendant Antero Resources purports to have purchased the Marcellus Rights from Crude Oil and Gas Company ("Crude"). Prior to any of the parties having an interest, the Collins Lease mineral rights were divided into what has been described in this civil action as shallow rights and deep rights.

This Court will briefly outline the division of shallow rights and deep rights under the Collins Lease. However, this Court notes various imperfections in the chain of title. First, each assignment of the rights under the Collins Lease was recorded in Ritchie County, West Virginia. The only one that was not recorded in Ritchie County was Crude's 1985 assignment to Monongahela Leasing ("Monongahela"). That was improperly recorded in Doddridge County, West Virginia. Second, two assignments do not reference the Collins Lease by name: (1) the 1985 assignment from Crude to Monongahela; and (2) the 1986 assignment from Monongahela to Farr.

In 1984, P.D. Farr ("Farr") was the owner of both the shallow rights and deep rights under the Collins Lease. However, that same year, Farr assigned his deep rights under the Collins Lease to Crude. The following year, Crude assigned its deep rights to Monongahela. Then, in 1986, Monongahela assigned its deep rights back to Farr. In 1991, Farr assigned his shallow rights to Key Oil, which assigned those shallow rights back to Farr about one month later. Therefore, at the time of the Subject Assignment in

2

1996, Farr owned both the shallow rights and deep rights under the Collins Lease. On August 30, 1996, Farr assigned, in a document titled "General Assignment and Bill of Sale" (hereinafter, the "Subject Assignment"), two wells (API well numbers 47-85-03583 and 47-85-02520) (the "Assigned Wells") and the associated leasehold rights to operate those wells to Perkins. ECF No. 90-1 at 1; ECF No. 82 at 6. The parties dispute whether the Subject Assignment assigned both the shallow rights and deep rights, and whether the Subject Assignment pertained only to the wells or included all leasehold rights under the Collins Lease. In 2010, defendant Antero Resources became interested in purchasing the Marcellus Rights as to those wells and it began negotiating with Perkins to purchase such rights. During defendant Antero Resources' negotiations with Perkins, defendant Antero Resources obtained an ownership report in November 2012 which was based on an examination of only Ritchie County records. Therefore, that report did not include the 1985 assignment from Crude to Monongahela which was recorded in Doddridge County, as stated above. Approximately two years later, Crude sold certain rights to defendant Antero Resources. Moreover, in 2015, Perkins assigned its rights to plaintiff Mountaineer Minerals.

This Court entered a memorandum opinion and order that granted plaintiff Mountaineer Minerals' motion for summary judgment and denied defendant Antero Resources' motion for summary judgment. ECF No. 76. This Court, at that time, concluded that defendant

3

Antero Resources had notice of Perkins' ownership interest in the Marcellus Rights but failed to use reasonable diligence to determine whether Perkins owned such rights.  Id. at 10, 15.  This Court concluded that defendant Antero Resources was not a bona fide purchaser and did not purchase its interest in the Collins Lease in good faith.  Id. at 16.  Therefore, this Court declared that Perkins' ownership interest was not void and plaintiff Mountaineer Minerals was the rightful owner of the Marcellus Rights.  Id. at 21.

The United States Court of Appeals for the Fourth Circuit vacated and remanded the judgment of this Court in order to resolve a genuine issue of material fact — which rights in the Subject Assignment did Farr assign to Ritchie.  According to the Fourth Circuit, the main issue is whether Ritchie, and thereby Perkins, and thereby plaintiff Mountaineer Minerals, obtained the Marcellus Rights under the terms of the Subject Assignment.  ECF No. 82 at 10.  Prior to remand, it was unclear based on the record whether Ritchie obtained the Marcellus Rights.  If Ritchie obtained the Marcellus Rights then plaintiff Mountaineer Minerals would be the rightful owner of such rights.

Following the remand from the Fourth Circuit, this Court set a briefing schedule and oral argument on September 12, 2019 to address the issue remaining following remand – namely, which rights Farr assigned to Ritchie in 1996, as those rights pertain to API Number 47-85-03583.  ECF No. 87.  Defendant Antero Resources

4

indicated at oral argument in this Court following the remand, without objection by plaintiff Mountaineer Minerals, that the Fourth Circuit "was satisfied that the depth of the other well [(API Number 47-85-02520)] was shallow under anyone's definition of shallow." ECF No. 97 at 6.

Currently pending before this Court are the following briefs together with responses and replies: (1) a supplemental brief by Antero Resources in support of summary judgment (ECF No. 90); and (2) a supplemental brief by Mountaineer Minerals in support of summary judgment (ECF No. 91). The Court will summarize the contentions of the parties in turn.

Plaintiff Mountaineer Minerals contends that the Marcellus Rights were assigned to Ritchie. ECF No. 91 at 12. In support, plaintiff Mountaineer Minerals states that in 1986, Monongahela assigned to Farr the Marcellus Rights and that in 1991, Farr owned all shallow rights as well. ECF No. 92 at 5. According to plaintiff Mountaineer Minerals, pursuant to the legal doctrine of merger, there is no longer a division of leasehold depths at the bottom of the fifth sand formation, but all leasehold rights and depths merged together and were owned by Farr in 1991. Id. Therefore, plaintiff Mountaineer Minerals concludes that, at the time of the Subject Assignment, Farr owned any and all leasehold rights and he assigned those rights to Ritchie without exceptions or reservations. Id. Plaintiff Mountaineer Minerals further maintains that a strict interpretation of the language in the

Subject Assignment and lack of words of limitation leads to the conclusion that the Marcellus Rights, and not just the wells, were assigned to Ritchie, and thereby to the plaintiff. ECF No. 91 at 12-16. Plaintiff Mountaineer Minerals then contends that even if this Court were to find the Subject Assignment's terms to be ambiguous, Ritchie would still receive the leasehold acreage and not just the wells based on the principle that all ambiguities are to be construed strictly against the assignor and in favor of the assignee. Id. at 17. In support, plaintiff Mountaineer Minerals states that it hired Tom O'Neill to provide a third-party title opinion (hereinafter "Title of Perkins") on the Collins leasehold ownership, and he found that Perkins was the owner only insofar as that oil and gas leasehold extends below the bottom of the fifth sand formation. ECF No. 91 at 18-19. Moreover, plaintiff Mountaineer Minerals refers to defendant Antero Resources' November 30, 2012 Revised Limited Ownership Report and the October 29, 2012 Limited Ownership Report, stating that those reports serve as further evidence that Perkins acquired any and all leasehold rights and not just the wells. Id. at 19-20.

Defendant Antero Resources asserts that the Subject Assignment did not include the Marcellus Rights because neither assigned well reached the depth of the Marcellus Shale Formation. ECF No. 90 at 6. Defendant Antero Resources cites the following in support of that conclusion: (1) the terms of the Subject Assignment; (2) various ownership reports, (3) previous statements made by

6

plaintiff Mountaineer Minerals, and (4) various public documents. Id. at 7-12. Defendant Antero Resources stresses the importance of the Fourth Circuit's finding that Farr assigned to Ritchie his interest in only two wells. ECF No. 95 at 8-9; see ECF No. 82 at 6 ("In 1996, Farr assigned to [Ritchie] all [Farr's] right, title, and interest in and to two specific oil and/or gas wells.") (internal quotation marks omitted). Therefore, defendant Antero Resources claims that while the Collins Lease applied to all depths and formations, the Collins Lease does not shed light on the depths and formations covered by later assignments. Id. at 10. Moreover, defendant Antero Resources states that Farr was capable of conveying the Assigned Wells, along with the leasehold interests necessary to operate them, from his larger interest in the Collins Lease. Id. at 10-11. Therefore, defendant Antero Resources concludes that words of limitation were not necessary. Id. at 11. Further, defendant Antero Resources indicates that the Title of Perkins which was prepared by Tom O'Neill & Associates, is unsworn, not previously admitted, has not been authenticated, and that Mr. O'Neill was never disclosed as an expert; therefore, it should not be considered. ECF No. 93 at 19-20. Even if the Court considers the Title of Perkins, defendant Antero Resources notes that the Title of Perkins does not specifically address the Marcellus Shale Formation or delineate depths. Id.

II. <u>Applicable Law</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Discussion

Following its review of the parties' supplemental motions, consideration of the parties' contentions at oral argument on September 12, 2019, and for the reasons set forth below, this Court finds that plaintiff Mountaineer Minerals cannot prevail on its claims against defendant Antero Resources because: (1)the Subject Assignment only pertained to two particular wells (API Numbers 47-85-03583 and 47-85-02520) and the leasehold interests that

relate to those wells; and (2) the two subject wells, particularly API Number 47-85-03583, do not reach the Marcellus Shale Formation. The Court will address each issue in turn.

A. <u>Farr only assigned Ritchie the interest in two wells and only the leasehold interests that relate to those wells</u>

The parties disagree as to whether the Fourth Circuit's mandate, in Case No. 17-2058 vacating this Court's earlier judgment and remanding this case to this Court, should be interpreted narrowly or broadly. Specifically, defendant Antero Resources contends that this Court should adopt a narrow construction of the Fourth Circuit's holding, indicating at oral argument that the issue pertains to which rights Farr assigned to Ritchie in the Subject Assignment. <u>See</u> ECF No. 97 at 3-4. Defendant Antero Resources asserts that Farr only assigned Ritchie the interest in two wells and only the leasehold interests that relate to those wells. <u>See id.</u> at 4. Defendant Antero Resources cites the Fourth Circuit's opinion where it stated "if the well does not reach the Marcellus Rights, the record leaves no reason to conclude that Ritchie obtained the Marcellus Rights in 1996." <u>See id.</u> at 5; <u>see also</u> ECF No. 82 at 10.

Conversely, plaintiff Mountaineer Minerals contends that the mandate directs this Court to determine what rights were assigned in the Subject Assignment. <u>See id.</u> at 16. Plaintiff Mountaineer Minerals asserts that the Subject Assignment not only assigned the interests in the two subject wells, but also any and all leasehold

rights associated therewith, specifically all 578 acres of leasehold under the Collins Lease. See id. at 18-19.

After review of the parties' briefs and contentions at oral argument, this Court believes that the Fourth Circuit's mandate requires a narrow construction. Specifically, this Court finds that "Farr assigned to Ritchie his interest in two wells." ECF No. 82 at 10; see also id. at 6 ("In 1996, Farr assigned to Ritchie Petroleum Corporation ("Ritchie") all [Farr's] right, title, and interest in and to two specific oil and/or gas wells.") (internal quotation marks omitted). The Subject Assignment states in pertinent part:

> [T]he first part does hereby grant, convey, transfer, assign, sell and set over unto the said party of the second part, <u>all of its right, title and interest in and to the following oil and/or gas wells and any and all leasehold rights associated therewith</u>:
>
> 1. <u>That certain oil and/or gas well, known as the Hughes Group #1 Well, bearing API Well No. 47-85-03583, and that certain oil and/or gas well known as the B & W Producers #1, API 47-85-02520</u>, both being situate upon that certain tract or parcel of land, containing 578 acres, in Clay District, Ritchie County, West Virginia, and drilled under a lease from William J. Collins and Sarah Collins, his wife, to B. D. Willis, and dates June 11, 1919, of record in Oil and Gas Lease Book 42, page 5.
>
> For the consideration aforesaid, the said parties of the first part does further grant, convey, transfer, assign sell and set over unto the party of the second part, <u>all of its right, title and interest, if any, in and to any and all casing in the well herein assigned, tanks and surface equipment used in connection with the same.</u> It is the intention of the parties of the first part by this Assignment to assign and convey unto the said party of the second part, said well and the casing

forming a part thereof and all of its interests in the drilling, producing and operating rights for the same, which were assigned to the parties of the first part in the chain of title.

<u>The party of the second part, by executing this Agreement, expressly covenants, warrants, and agrees to assume and perform any and all obligations and responsibilities of the parties of the first part herein, of any kind or character whatsoever, for plugging said well</u>.

. . . .

The Assignee expressly covenants and warrants that it will perform, abide by and comply with all the terms and conditions of any such instruments insofar as such terms, conditions and obligations are applicable to the rights herein assigned, including, but not limited to, <u>payment of all lease rentals and royalties, if applicable, and the providing of free gas to any parties having the right to receive the same under the terms of the lease under which the well herein assigned was drilled</u> . . .

ECF No. 90-1 at 1-2 (emphasis added).

Based on the plain and unambiguous language of the Subject Assignment, this Court finds that Farr transferred to Ritchie and therefore to Perkins only the two Assigned Wells and leasehold rights only insofar as those rights pertained to those specific Assigned Wells. This conclusion is supported by references within the Subject Assignment pertaining to certain details regarding the casing of the wells, royalty obligations, and the assignee's interest in the drilling, producing, and operating rights as they relate to the Assigned Wells. This conclusion is further bolstered by the October 29, 2012 Limited Ownership Report which states in the index section that, with respect to the Subject Assignment, "[p]arties of the first part does hereby grant, convey, transfer,

12

assign, sett and set over unto the party of the second part, all of its RTI in and to oil and gas wells and any and all leasehold rights associated therewith." ECF No. 53-22 at 31.

This Court notes that while it is true that in 1991 when Key Oil assigned its shallow rights back to Farr, Farr was the owner of both the shallow rights and the deep rights under the Collins Lease, defendant Antero Resources is correct in stating that Farr is fully capable of conveying a limited estate from his larger interest in the Collins Lease. See ECF No. 93 at 17.

Lastly, contrary to plaintiff Mountaineer Minerals' contention that since there are no words of limitation in the Subject Assignment the leasehold rights extend to any and all leasehold rights, this Court finds that because the Subject Assignment was limited to the Assigned Wells, no reservation language was needed to restrict the leasehold rights. In other words, because the Subject Assignment assigned only the Assigned Wells and the leasehold rights necessary to operate those Assigned Wells, Farr owned the rest of the leasehold rights in the Collins Lease. See Faith United Methodist Church and Cemetery of Terra Alta v. Morgan, 231 W. Va. 423, 431 (W. Va. 2013) ("When [a] fee severance is completed, separate and distinct estates are created, each being a fee simple estate in land, having all the incidents and attributes of such an estate . . . Each estate may be conveyed and dealt with as any other fee simple, and estates therein of less quality may be created . . .").

B. <u>API Number 47-85-03583 did not include the Marcellus Rights</u>

As the Fourth Circuit has noted, the record indicates that: (1) the deep rights begin where the shallow rights end; (2) the shallow rights extend through the fifth sand formation; (3) the deep rights begin after the fifth sand formation; (4) the fifth sand formation is thousands of feet above the Marcellus Shale Formation; and (5) the deep rights include the Marcellus Rights. ECF No. 82 at 4. The record further indicates that the fifth sand formation is thousands of feet above the Marcellus Shale Formation, but the record does not indicate the exact depth at which the fifth sand formation ends or the exact depth at which the deep rights begin. Id. at 10. Therefore, prior to the Fourth Circuit's remand, it was unclear whether API Number 47-85-03583 reaches the Marcellus Shale Formation. Id. The Fourth Circuit made it clear that "if the well does not reach the Marcellus Rights, the record leaves no reason to conclude that Ritchie obtained the Marcellus Rights in 1996."

After review of the supplemental briefs, responses, replies, and after considering the arguments presented at oral argument pertaining to the supplemental briefs, this Court finds that Perkins did not own the Marcellus Rights it claims to have conveyed to plaintiff Mountaineer Minerals.

Based on the Generalized Stratigraphic Chart for West Virginia, that was enlarged as a demonstrative exhibit and discussed in detail at oral argument, the fifth sand formation lies

in the Upper Devonian region and extends down to near what is labeled as "Hamilton Group" in the Middle Devonian region. See ECF No. 90-4. The Hamilton Group includes the Marcellus Shale Formation. Id. Based on the record, API Number 47-85-03583 did not reach the Marcellus Shale Formation. As indicated by the Fourth Circuit, API Number 47-85-03583 extends to a depth of about 6,000 feet. ECF No. 82 at 6. The November 30, 2012 Limited Ownership Report states that after API Number 47-85-03583 was recompleted to a producing depth of about 6,000 feet, the well was considered to be within the "Alexander" formation. ECF No. 90-2 at 6. Based on the stratigraphic chart (ECF No. 90-4), the Alexander region lies within the fifth sand formation, in the Upper Devonian region, above the Marcellus Shale Formation.[2]

Indeed, plaintiff Mountaineer Minerals stated at oral argument that "Perkins did not drill the well down into the Marcellus but right above it." See ECF No. 97 at 36. Rather than disputing defendant Antero Resources' evidence, throughout oral argument, plaintiff Mountaineer Minerals focused on how the division of deep rights versus shallow rights is irrelevant since all leasehold rights under the Collins Lease were transferred to Perkins. See id. at 17.

Based on the material presented in the supplemental briefs and the statements at oral argument, this Court finds that API Number

---

[2]Similarly, the November 30, 2012 Limited Ownership Report states that API Number 47-85-02520 is located within the Injun region, above the Marcellus Shale Formation. ECF No. 90-2 at 8.

15

47-85-03583 does not reach the Marcellus Rights, and accordingly there is no genuine issue of material fact to be resolved. Therefore, after considering all the evidence indicating that the Assigned Wells, particularly API Number 47-85-03583, lies within the fifth sand formation in the Upper Devonian region, "the record leaves no reason to conclude that Ritchie obtained the Marcellus Rights in 1996." ECF No. 82 at 10. Because Ritchie never obtained the Marcellus Rights in 1996, Perkins was never assigned those rights. Therefore, plaintiff Mountaineer Minerals could not have received those rights by assignment.

IV. Conclusion

For the reasons set forth above, defendant Antero Resources Corporation's supplemental motion for summary judgment (ECF No. 90) is GRANTED. Accordingly, plaintiff Mountaineer Minerals, LLC's supplemental motion for summary judgment (ECF No. 91) is DENIED.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   November 5, 2019

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE